May it please the Court, Philip Smith on behalf of the appellant, Mr. Abdul Almazghar. Your Honors, I'd like to reserve one minute of my time for rebuttal, if I may. You may. Your Honors, Mr. Almazghar is an individual that is from Yemen who came to the United States in 1992. Subsequently, he did engage in criminal activity in this country. He was convicted, perhaps in this very courtroom, of distribution of methamphetamine and for the fraudulent use of a food benefit card. He was sentenced to three years in prison. He served three years in prison for those crimes. But, Your Honor, this case is not about crime and punishment. It is about torture. We, the United States, do not engage in torture, we do not condone torture, and we do not return an individual to a place where there are substantial grounds for believing that they will be subject to torture. Okay, now given that construct, what is supposed to happen with the prior proceeding where on the issue of fear of future persecution and torture, the IJ has determined that Mr. Almazghar is not credible about his statements about his past circumstances and has, at least in the IJ's view, addressed the concerns about future persecution. If this were to go back with that adverse credibility finding extent, what is it that one would rely upon to determine whether or not he would face torture if he were removed from the IJ? Let's assume he doesn't qualify for asylum. This is strictly a question of whether a removable individual is going to be sent back to a country where he is subject to torture. How does one prove that? Under the regulations, ACFR 1208.161718, they state that all evidence of the possibility of future torture shall be considered, including evidence of past torture, evidence of gross, flagrant, or widespread human rights abuses in the country, and any other relevant country conditions, evidence regarding torture. All right, so with respect to Almazghar's statements, the IJ has clearly determined him not to be credible about anything. Okay, so that aspect of the proof, is that binding? Is it law of the case before the IJ so that all that would be open for consideration would be country reports and that kind of evidence? Certainly the documentary evidence still has to be considered, but at the time the immigration judge made the adverse credibility determination, relief under the Convention Against Torture was not available. So at the hearing on June 30, 2003, it was Mr. Almazghar's first opportunity to have a hearing under the Torture Convention. And at that hearing, Mr. Almazghar introduced the psychological evaluation performed by Dr. Givy, which did two things. One, it sought to explain the inconsistencies in Mr. Almazghar's previous testimony, and two, it of itself was evidence that he had been subjected to torture in Yemen. Because it was entirely consistent with the symptoms, the diagnosis of Dr. Givy, diagnosed symptoms that Mr. Almazghar was presenting were entirely consistent with the symptoms that are presented by survivors of torture. And there was a report in the record describing those symptoms. And the immigration judge, he decided to give no weight and he completely disregarded the psychological evaluation. So do we have to overturn his credibility determination in order for your client to have any chance of prevailing on his CAT claim? That's what I'm trying to do. No, Your Honor. Even under this court's case law, under Comalthus v. INS, and even under Farah v. Ashcroft, an adverse credibility determination is not sufficient to deny the Convention Against Torture application without considering the other evidence. That brings me back to my opening question. Then what is the evidence? The IJ, you're saying, can stand unreversed, if you will, on his adverse credibility determination on Mr. Almazghar's credibility. So then he goes back for now, let's say, a pure Convention Against Torture hearing. What is going to be the relevant evidence that, in addition to the discredited testimony of Mr. Almazghar, that's going to establish torture? You're telling Mr. Givey hearsay testimony as a psychiatrist based on his interview with Mr. Almazghar seems, in the IJ's view anyway, of no weight. Because it's simply taking what Almazghar had to say, and the IJ has already rejected that. Well, Dr. Givey did, in his evaluation. He administered 15 different diagnostic psychological tests to Mr. Almazghar. What's that going to prove? It's going to prove that he had some trauma, which gave rise to this nonlinear thinking, which the IJ has rejected. So I'm just still trying to understand. It's already confusing enough between what went on in the proceedings extent of the IJ to say what wasn't before him on the remands after the conviction. So I'm just trying to get a handle on what, if we were to agree with you he didn't get a CAT type of hearing, what is the evidence that has to be considered if, in fact, we aren't reversing the adverse credibility finding? The documentary evidence about the prevalence and the systematic use of torture in Yemen. The problem I'm having with this argument is that I'm having trouble seeing that the documentary evidence about the use of torture in Yemen, or a doctor's opinion that some symptoms are the way he gives inconsistent statements, is consistent with prior torture, that either of those things could prove it's more probable than not that this particular person will be tortured if returned to Yemen. Saying something's consistent with torture doesn't say there's a probability that torture will occur if he is sent back, at least as I'm seeing it. It is a high burden to me, Your Honor, but that evidence has to be considered. And there's no evidence here that the evidence has been considered. By the way, can I ask one question? No, please. Does the frivolous asylum bar have no application in regard to a CAT claim? Is there any precedent? My impression was we don't have any Ninth Circuit precedent about whether the so-called frivolous asylum bar, frivolous asylum application bar, which I think was invoked by the immigration judge? That is correct. Whether that would apply to bar a later CAT claim or not. Do we have any authority on that? There's none in this circuit, Your Honor. I'm not aware of any authority that suggests that the frivolous asylum bar would bar a convention against torture claim. It seems to me, and nor am I, and it seems to me in theory at least, it would be odd if that type of a bar could bar a CAT claim where someone had evidence of torture, of a probability of torture. Although it's also hard to see how they'd have a frivolous asylum application if they had evidence of torture. Yes, I agree with that. Although that frivolous finding in this case, it does not, it did not apply to Mr. Almazar's situation because he filed his asylum application in 1992 and that asylum application remained pending and that was the asylum application that the immigration judge adjudicated and the regulations and the statute say the frivolous filing only applies to asylum applications that are filed after April 1st, 1997. Was that point brought up before the IJ or in front of the BIA or is it an unexhausted claim here? Mr. Almazar was pro se on his appeal after 2003, after the hearing in 2003. He did say that the immigration judge did not properly consider his convincing his torture application. He did not specifically address this issue that it didn't apply. The board did specifically find that it was appropriate though in its decision. If we rejected the frivolous asylum application bar as applied to a camp claim, then I'm left with the issue that Judge Fischer was concerned about. That is, what evidence is there of a likelihood of torture once you take his testimony out of it? Well, I would say, just briefly, apart from the documentary evidence, there is evidence of his identity, of his birth in Yemen, his passport. The likelihood that he would be tortured? There is not, in the documentary evidence, there's not direct evidence that he would be tortured. All right. It's a challenging case. You'll have a little bit of time to rebut. I'll give you a minute. Somewhere in the course of your argument, I would appreciate it if you'd address the relevance of the frivolous asylum application bar, if any, to a camp claim. I'll do my best, Judge. I have to start off this argument where I started off the last one. You can junk my jurisdictional argument. I think it is clear in this case that this is a petition from the denial of a petition for writ of habeas corpus under 28 United States Code, section 2241, that was pending at the time the REAL ID Act was passed on May 2005. Therefore, this court has held it will be treated as a petition for review. The jurisdiction, then, I'm going to read a section from a case presented to this court by opposing counsel while it was on appeal, the Alvarez-Barajas case, where it says, habeas petitions as a petition for review does not affect our review standard. Our petition for review reviewed the BIA's decision regarding purely legal questions de novo. The same standard we apply when reviewing the district court's decision in denying a petition for writ of habeas corpus, which, of course, can only be used to challenge constitutional issues. This is probably the significant part. The converse, however, changes the decision we review. We now review the BIA's decision, not the district court's order. The REAL ID Act, as I pointed out before, is basically a review of the administrative record. That's what the act says. And it says the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary. What did the BIA say about the Convention Against Torture claim? I think I know what the IJ said. Did the BIA add anything to that? I don't believe so, Judge. And there was a blip in the brief you may not have noticed, but this case has already been before you once on a petition for review. I mean, you can check your history. On January 2nd of 2004, this court issued an ordering asking Petitioner Albo Chokas why this court had jurisdiction of a petition for review because of his two felony convictions under United States Code Section 1252A-2C, which eliminates review of this court for people who have certain felony convictions. I guess what I'm telling you now is the way the situation is, you've got to decide this issue based on what would have been before the immigration judge and the BIA, not anything that may have been added in the 2241 in front of Judge Panner. If you find that record is incomplete, then you need to go back and get an administrative record. I will note the appellant hasn't done anything since May 11th to bring before this court the administrative record. I've measured this statement, but I guess what Judge Panner said is irrelevant, and I would like you not to tell him I said that. But you're judging now what the immigration judge said and what the BIA did. In this particular case, I submit to you that the immigration judge found this person not credible. That was his finding. As trial judges, you know, you see witnesses in front of you. You make judgments that a cold record cannot really review. He found that this person wasn't credible. Well, the cold record may be cold, but the second hearing was hardly cold. The IJ was incredibly aggressive in his treatment of the expert witness. I also found an enormous number of inaudibles or indecipherables, so the translation or the decoding, well, both, because there was some argument in the first hearing. Apparently the translator was from a different part of the country or different region, and therefore there was a lot of translation problems. But on that record, and I've tried a lot of cases, and I take exactly what your point is, the cold record doesn't give all the nuances. But I recognize a hostile judicial officer, and this judicial officer was hostile. Whatever his motivation was, that doesn't appear. But that is not the kind of record that impresses me to the fairness of the adjudicator here. So I have some questions about what one does with that. What I am interested in is, given the clear finding, whether I would agree with it or not, about credibility and whether it was a misunderstanding or a misapprehension or it's a psychological impediment, the record is what it is, what if we agree that there was not a true cat type of hearing here on the issues that are relevant under the Convention Against Torture? What would the remand be to do? What would be the evidence to be looked at? What would be the standards and what would be the ability, if any, of the petitioner to re-raise, again, the issue of whether there was some excuse for his testimony in the prior proceedings? I would suspect that there would be very little limitation if you remanded this on what the petitioner could present, not unlike an offer of proof if you remanded something to district court in a criminal trial. So if the immigration judge, Judge Bennett, was to have to re-hear this matter, I presume there would be very few limitations on what he could receive in evidence, especially if you remanded it with that instruction. Even to go back and revisit the issue of credibility, the prior adverse credibility determination, which he seemed absolutely disinclined to do in the remand from the U.S. I think the answer would be yes. Okay. You know, whether or not Mr. Alwyn's arc would persuade him, given this record. One of the issues you always ran in these CATS claims, and you as a trial judge would know, you're stuck with what the witness tells you because you can't go into these countries and get witnesses if I was, you know, how am I going to impeach this guy's testimony? We understand that with these immigration cases on both sides you're under a bit of constraints because you don't have the full kind of record to develop and sort of take what you get. Right. Okay. Now, is it your position that what happened on the BIA remand met all the requirements for a CAT type of hearing? Yes, it is, and also that it met the constitutional standards, which is what you are reviewing under 8 U.S.C. 1252 standards. Where was the consideration of the kind of torture that was practiced in Yemen and his particular exposure to it? Well, as the immigration judge said in his statement, he considered the entire record, and that was part of the record in making his decision. What were his findings that why he decided that there isn't a threat of torture in Yemen? There isn't in his articulated opinion, but, you know, you cannot write down everything you may be thinking. That's why he said it. Well, the focus was torture. I mean, you can't write down everything. There's a lot about why he didn't believe Mr. al-Nusra, but I've looked in vain for any analysis of whether or not there would be torture, that there's a regime in Yemen that this person, if he was otherwise credible about his personal nexus to it, was extant in Yemen. He, the immigration judge, Judge Bennett, did not articulate that. The country reports and those records about torture are available and were part of the record. They're available now. You know, the State Department re-ups those things all the time. Whether he articulated that or not, I don't know. I think you could watch the news and decide that, yeah, there is torture in Yemen. Does it meet the cat's claim about, you know, being from a government institution based on the standards, or whether it's just his neighbors don't like him and throwing stones at him? Another question, then. You've reminded us, not that we needed it, that he has obviously served prison time. Does the fact that he's a convicted felon preclude a cat claim? No, I don't believe so, Judge. You know, he's removable, and you're just basically now saying he's going to keep his status as removability, but we're going to allow him to stay here. Or find an alternative. Right. You know, if we were to go back, as the lady before who has an Italian passport, she's part of the European Union. She can travel to any country in the European Union. Okay. Does the frivolous asylum application doctrine apply? I didn't get to your question. The answer, I think, is yes, it does. Because the asylum claim, even though filed in Los Angeles, was not decided. And when they came in front of Judge Bennett, that wasn't a transferred asylum claim. They filed it anew. And once they filed it anew, that's the date you look at. And, therefore, the frivolous asylum bar was applicable. If you find differently, then my argument doesn't apply. But I don't think that you can argue that you filed an asylum claim with the asylum office, which is a different organization. It's part of the old immigration and naturalization system. It's not part of immigration court. That when he came up here and said he had an immigration claim pending, and the judge says, fine, I'll consider it, that it was transferred and filed in immigration court that day. Excuse me, filed in immigration court that day. It wasn't transferred, and it takes that date. Would the frivolous asylum application bar preclude consideration of a cap claim? Yes. Even though it arises under a treaty, basically? I think so, Judge. I mean, that whole frivolous, I mean, think of the reasons, and I'm over my time. It is because we don't believe you. That's a frivolous claim. And so it would be only logical if we don't believe you, we don't believe what you say in your cat's claim. I think that's the logical result of that. I'm sorry to raise all these jurisdictional issues. Thank you for considering my argument. You can have a minute for rebuttal. Thank you, Your Honor. Just one more point on that frivolous filing claim, Your Honor. I think my colleague's position that that bars a cap claim demonstrates why that point is so important in this case. And the regulation itself, even if this regulation were to apply, the regulation says it does not preclude a withholding of removal claim. So, and analogizing to that, the argument is that it does not bar a cap claim under law. The immigration judge, though, may have reached the same conclusion as my colleague that it bars the cap claim as well. With regards to the REAL ID Act, in terms of this case, the court has held that the REAL ID Act was silent as to habeas appeals that were pending with the Court of Appeals. The court has treated those as petitions for review. It also has treated it as an appeal from a habeas denial. And it essentially has not found a restriction on the scope or the standard of review, whether it was treated as a petition review or under the habeas denial. That's all. Thank you. Thank you, counsel, both sides, for your arguments. The case is now adjourned.
judges: Fisher, Gould, Bea